UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

Marelviz Del Valle Rojas
aka Marelvis Salazar
aka Marelvis Rojas

                        Debtor.

Chapter 7

Case No. 1-15-42037-nhl

----------------------------------------------------------------x
Marelviz Del Valle Rojas,

                        Plaintiff,

-against-

Educap Inc.,

                        Defendant.

Adv. Pro. No. 1-15-01072-nhl

----------------------------------------------------------------x

## DECISION ON MOTION FOR SUMMARY JUDGMENT

Appearances:

Brian McCaffrey, Esq.
Brian McCaffrey, P.C.
88-18 Sutphin Blvd., 1st Floor
Jamaica, New York 11435
*Attorney for the Plaintiff-Debtor*

Jeffrey Harris Ward, Esq.
Law Offices of Jeffrey H. Ward
330 Seventh Avenue, 15th Floor
New York, New York 10001
*Attorney for Defendant-Movant*

Karen Ferrare, Esq.
Brian McCaffrey, P.C.
88-18 Sutphin Blvd., 1st Floor
Jamaica, New York 11435
*Attorney for the Plaintiff-Debtor*

NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

Debtor Marelviz Del Valle Rojas (the "Debtor") commenced this adversary proceeding pursuant to § 523(a)(8) of title 11 of the United States Code and Federal Rule of Bankruptcy Procedure 4007.[1] Her First Amended Complaint to Determine Dischargeability of Debt (the "Amended Complaint") seeks a judgment declaring that the debt owed EduCap, Inc., defendant herein ("EduCap"), is dischargeable based on a theory of undue hardship. *See* Am. Compl., ECF No. 2.

Now before the Court is EduCap's motion for summary judgment (the "Motion"). Sum. J. Mot, ECF No. 12. EduCap has asserted that its debt, arising from an educational loan that the Debtor guaranteed, is excepted from discharge under § 523(a)(8), and that the Debtor cannot avoid this exception because she cannot show, and has not shown here, that repayment would constitute an undue hardship. Memo. of Law 2–3, ECF No. 12-3. For the reasons detailed below, the Court agrees with EduCap and accordingly grants the Motion.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference dated August 28, 1986, as amended by order dated December 5, 2012, of the United States District Court for the Eastern District of New York. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This decision encompasses the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

---

[1] Title 11 of the United States Code may be referred to throughout as the "Bankruptcy Code."

## Background

The following facts are not disputed.[2] The Debtor is approximately 38 years old and resides in Queens, New York. Interrogatories, ECF No. 12-2. She is married and has two minor children. *Id.;* 2014 Tax Return, ECF No. 12-2. Both she and her husband are employed. Petition, ECF No. 1, Case No. 15-42037-nhl. She works as a jewelry store clerk with the Harout R Group LLC, and he works at the Friends Coffee Shop; each has been at their respective positions for approximately three years. *Id.* Their combined monthly income is approximately $4,192, and their monthly expenses are approximately $4,390. *Id.* According to their 2014 tax return, the couple earned a gross income of $61,191 in that year. Tax Ret., ECF No. 12-2.

On September 26, 2006, the Debtor executed a "Combined Private Education Loan Application and Note" (the "Note") for a "Loan to Learn Education Loan" in the amount of $26,844 (the "Loan"). Loan App. & Note, ECF No. 12-1. The Note identifies the Debtor as a co-signer, and Bany Loaiza ("Loaiza") as the "Student Borrower." *Id.* The Debtor is Loaiza's aunt. Dec. 2 Tr. 8:12–17, ECF No. 20. The Note's terms and conditions provide that the Loan's purpose was to "pay the Student's costs of attendance of the Student's School," which is listed as San Joaquin Valley College ("SJVC"). Loan App., ECF No. 12-1.

The Loan was a part of the "Loan to Learn Education Loan Program," which, according to the Application, is a program operated by EduCap. *Id.* ("Loan to Learn is a program of

---

[2] Because the Debtor failed to file a separate statement of material facts with its Affirmation in Opposition to the Motion, *see* Aff. in Opp'n, ECF No. 14, all of the material facts set forth in EduCap's statement are deemed admitted, *see* E.D.N.Y. Local Bankr. R. 7056-1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted by the opposing party unless controverted by the statement required to be served by the opposing party . . . ."); Memo. of Law 5–6, ECF No. 12-3. However, the facts in EduCap's statement, and in turn those facts deemed admitted, are limited to quoted language from the Combined Private Education Loan Application and Note, and an unsupported assertion that the loan in question is a "qualified education loan" within the meaning of § 523(a)(8)(B). Memo. of Law 5–6, ECF No. 12-3. Despite these deficiencies on each side, information sufficient to address the merits of the parties' claims is available in the affidavits and exhibits supplied by EduCap. *See generally* Mot. for Summary Judgement, ECF No. 12. The Court will rely on these submissions in determining the existence of any material issues of fact.

Educap, Inc."). EduCap was responsible for "administer[ing]" the Loan, which entailed at least providing and processing the loan application, and acting as the servicer. *Id.* Though HSBC Bank USA, N.A. ("HSBC") funded the Loan, it was ultimately purchased by EduCap around December of 2006 pursuant to a Certificate of Sale and Assignment and General Endorsement and Limited Power of Attorney. Cert. of Sale, ECF No. 12-1.

The repayment period for the Loan was 240 months, and monthly payments were to be made in the amount of $367.05. *Id.* Payments were made from November of 2006 to November of 2008, but have not been made since. *See* Payment History, ECF No. 12-1. On March 27, 2014, EduCap's attorney mailed a demand letter (the "Letter") to the Debtor explaining that the principal amount of the Loan plus interest and late fees were due and owing. Demand Letter, ECF No. 12-1. After EduCap received no response to the Letter, it commenced an action in the New York State Supreme Court of Queens County seeking to collect the full amount due under the Note (the "State Court Action"). *See* Memorandum Decision, ECF No. 12-1. The State Court Action resulted in a default judgment in EduCap's favor. *Id.*

On May 1, 2015, the Debtor filed a voluntary petition (the "Petition") under chapter 7 of the Bankruptcy Code. Ch. 7 Notice, ECF No. 12-2. The Schedules filed with the Petition show only general unsecured claims totaling $64,200.78. Sched. F, ECF No. 12-2; Petition, ECF No. 1., Case No. 15-42037-nhl. Of that amount, $61,665.30 is attributed to EduCap's claim. Sched. F, ECF No. 12-2. The Debtor commenced the instant adversary proceeding to declare that sum dischargeable as an undue hardship pursuant to 11 U.S.C. § 523(a)(8). *See* Am. Compl., ECF No. 2.

## Discussion

*Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56, made applicable to this proceeding by Bankruptcy Rule 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). In ruling on a motion for summary judgment, a court looks to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," *Celotex*, 477 U.S. at 322 (quoting Fed. R. Civ. P. 56(c)), and reviews the evidence in the light most favorable to the non-moving party, with all inferences drawn in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

While the initial burden is on the movant to demonstrate the absence of a genuine dispute of material fact with particular cites to the record, *Celotex*, 477 U.S. at 323; *Marvel*, 310 F.3d at 286, the non-moving party cannot defeat summary judgment by merely casting doubt on some of these facts, *see Kulak*, 88 F.3d at 71. The non-moving party must point to disputed facts whose determination would affect the outcome of the case such that a reasonable trier of the fact could find in favor of that party. *Anderson*, 477 U.S. at 247–48; *Matsushita*, 475 U.S. at 586–87.

*Applicability of 11 U.S.C. § 523(a)(8)*

Section 523(a)(8) of the Bankruptcy Code excepts from discharge certain types of education debt. It provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> …
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . . .

11 U.S.C. § 523(a)(8). In sum, the subsection makes nondischargeable four types of debt:

> (1) educational benefit overpayments or loans made, insured, or guaranteed by a governmental unit;
> (2) educational benefit overpayments or loans made under any program partially or fully funded by a governmental unit or nonprofit institution;
> (3) obligations to repay funds received as an educational benefit, scholarship, or stipend; and
> (4) "qualified education loan[s]."

*In re Decena*, 549 B.R. 11, 17–18 (Bankr. E.D.N.Y. 2016), *rev'd on other grounds sub nom.*, *Citizens Bank v. Decena*, 562 B.R. 202 (E.D.N.Y. 2016).

Relevant here is the second category, which covers loans made under programs funded, at least in part, by nonprofit entities. *See id.*; 11 U.S.C. § 523(a)(8)(A)(i). The Debtor has not challenged that the Loan is an educational loan made under the Loan to Learn Program, which is partially funded by EduCap, a nonprofit. The Loan was made for the express and sole purpose of covering Loaiza's "costs of attendance" at SJVC, which entailed "tuition and other reasonable educational expenses." Loan App., ECF No. 12-2; *see In re Sears*, 393 B.R. 678, 680–81 (Bankr.

W.D. Mo. 2008) (finding that a loan was an "educational loan" based on the same language in the acknowledgements of a Loan to Learn note); *see also In re Jean-Baptiste*, Case No.: 8–13–72953–las, Adv. Pro. No.: 8–13–08129–las, 2018 WL 1267944, at *8 (Bankr. E.D.N.Y. Feb. 23, 2018) ("Courts have held that the stated purpose and not the actual use of the loan determines whether a loan is an "educational loan" excepted from discharge under § 523(a)(8)." (citing *In re Murphy*, 282 F.3d 868 (5th Cir. 2002))). Similarly, the service provided by Loan to Learn is, on the facts presented by EduCap, "an integrated effort to provide a streamlined method for the procurement, processing and service" of educational loans, and therefore constitutes a "program" within the meaning of the provision. *See In re Pilcher*, 149 B.R. 595, 599 (B.A.P. 9th Cir. 1993).

Moreover, EduCap's role in administering, and subsequent purchase of, the loan made by the Loan to Learn Program constitutes funding under § 523. Whether an entity "funds" a program is widely viewed as a question of the extent and nature of that entity's involvement with the administration of the program. *See Sears*, 393 B.R. at 680–81; *see also Pilcher*, 149 B.R. at 600 (addressing "funding" as a matter of an entity's participation in the relevant program); *Decker v. EduCap, Inc.*, 476 B.R. 463, 468 (W.D. Pa. 2012) (finding that EduCap funded an educational loan program by "acting as disbursement agent, servicer, and guarantor"); *In re Hammarstrom*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989) ("Congress intended to include within section 523(a)(8) all loans made under a program in which a nonprofit institution plays any meaningful part in providing funds."). The Court of Appeals for the Second Circuit has cited this involvement-based view approvingly in support of its holding that § 523(a)(8) includes "loans made pursuant to programs that are guaranteed by non-profit institutions." *In re O'Brien*, 419 F.3d 104, 107 (2d Cir. 2005). While the Court has been provided no indication that EduCap guaranteed the loan here, its operation of the loan application process, its servicing of the loan,

and its purchase of the same, are, taken together, sufficient to meet § 523(a)(8)'s funding requirement. *See Decker*, 476 B.R. at 468 (likening EduCap's role to that of the non-profit entity in *O'Brien*); *see also Jean-Baptiste*, 2018 WL 1267944, at *7 (noting that loans "ultimately purchased or guaranteed" by nonprofit institutions are generally excepted from discharge under § 528(a)(8)(A)).

The Debtor has challenged only the applicability of the final element of § 523(a)(8)'s second category—that is, EduCap's status as a "nonprofit institution." In her response to the Motion, the Debtor asserts that EduCap was at some point a nonprofit, but lost that status after the organization failed "to file taxes for three consecutive years." Aff in Opp'n ¶ 7, ECF No. 14. However, she has offered no evidence to support this assertion. EduCap, for its part, has provided the Note, which refers to EduCap as a nonprofit, and a document from the IRS showing that EduCap is a tax-exempt public charity. *See* Loan App., ECF No. 12-2; Reply Dec. Ex. A, ECF No. 15. The Debtor's unsupported assertion does not cast sufficient doubt on EduCap's nonprofit status.[3] *See Kulak*, 88 F.3d at 71.

*Undue Hardship*

As the Loan falls within the scope of § 523(a)(8)(A)(i), it is dischargeable only if requiring its repayment would impose an undue hardship on the Debtor. *See* 11 U.S.C. § 523(a)(8). Within this Circuit, the existence of an undue hardship is determined by the three factors announced in the 1987 decision of *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987). Under *Brunner*, a debtor must show that

> (1) she cannot maintain, based on current income and expenses, a "minimum" standard of living for herself if forced to repay the loans; (2) additional

---

[3] The Debtor also raises the issue of whether SJVC lost its accreditation and failed to disclose the same to its students. Aff. in Opp'n ¶¶ 27–29, ECF No. 14. This claim, relevant to whether the Loan is subject to § 523(a)(8)(B) (excluding from discharge "qualified education loan[s]"), is unsupported, and, in any event, moot because the debt is covered by § 523(a)(8)(A)(i). *See Sears*, 393 B.R. at 680.

> circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) she has made good faith efforts to repay the loans.

*In re L.K.*, 351 B.R. 45, 52–53 (Bankr. E.D.N.Y. 2006) (citing *Brunner*, 831 F.2d at 396). A failure to satisfy any one of these elements is fatal to a debtor's assertion of an undue hardship. *See In re Grubin*, 476 B.R. 699, 710 (Bankr. E.D.N.Y. 2012).

The Debtor has argued that the *Brunner* test applies only to the borrower of a loan subject to § 523(a)(8), and does not apply to her, a co-signer. Aff in Opp'n ¶ 17, ECF No. 14. She asserts that instead a "totality of the circumstances" approach should be used to assess undue hardship. However, she offers no support for this proposition, and none is apparent. To the contrary, courts within this Circuit have applied the standard to both students and non-student co-obligors alike. *See, e.g.*, *In re Hixson,* 450 B.R. 9, 16–17 (Bankr. S.D.N.Y. 2011); *In re Wells*, 380 B.R. 652, 658–59 (Bankr. N.D.N.Y. 2007). As has been convincingly noted, the exceptions to discharge found under § 523(a) apply to any "individual debtor," and subsection (a)(8) makes no further distinction between types of individuals. *Hixson*, 450 B.R. at 17–18 (citing *In re Pelkowski*, 990 F.2d 737, 741 (3d Cir. 1993)). That being so, "educational loans are nondischargeable regardless of whether the borrower was the student." *In re Stein*, 218 B.R. 281, 286 (Bankr. D. Conn. 1998). Likewise, just as the status of the debtor does not alter the application of § 523(a)(8), it does not alter the application of *Brunner*, which is still the test used to determine undue hardship under that provision. *See id.*

As to the substance of *Brunner*, EduCap has asserted that the Debtor has made no showing with respect to any "additional circumstances" under the second prong, nor any showing of a good faith effort to repay under the third. Memo. of Law, ECF No. 12-3. The Debtor, for her part, argues that an issue of fact exists under the first prong, as to her income and

expenses. Aff in Opp'n ¶¶ 17–21, ECF No. 14. In particular, she points out that her response to EduCap's interrogatory about her expenses is clearly erroneous—she lists, for instance, monthly rent of $9,000 and a monthly telephone bill of $957.60—and therefore presents an issue of fact for this Court to determine. *Id.* at ¶ 18. She also asserts that an issue of fact exists as to how she and her husband combine their income. *Id.* at ¶ 19.

The Debtor appears to overlook that, even if these arguments were availing, or if, under the Debtor's best case scenario, EduCap could not show as a matter of law that she is able to maintain a "minimal" standard of living, a failure to demonstrate an issue of fact related to *Brunner*'s other two prongs would still doom her chances of surviving summary judgment. *See Grubin*, 476 B.R. at 710. And, indeed, EduCap has accurately asserted that she has not introduced any evidence at all on these points, no less evidence that introduces an issue of fact.

Under *Brunner*'s second prong, a debtor must establish that a present financial hardship is likely to persist. *See Wells*, 380 B.R. at 660. "Mere inconvenience, austere budget, financial difficulty and inadequate present employment" will not suffice to meet this standard; instead, a debtor must show some "exceptional" circumstances outside of her control. *Id.* at 660–61. Such circumstances generally entail illness or disability, *see In re Benjumen*, 408 B.R. 9, 16 (Bankr. E.D.N.Y. 2009), though these may nevertheless be insufficient to meet this exacting element, *see L.K.*, 351 B.R. at 53–54 (finding that emotional and psychological disorders did not show that a financial hardship would persist where the debtor, despite her illnesses, had periods of high functionality). The Debtor has made no such showing. Instead, the evidence presented by EduCap suggests that she is young, that both she and her husband have been consistently employed, and that there is nothing preventing any future or additional employment.

Even if this were not the case, there is still an absence of any fact related to the Debtor's good faith efforts to repay the loans. "This prong of the analysis recognizes that undue hardship encompasses a notion that the debtor may not willfully or negligently cause [her] own default." *L.K.*, 351 B.R. at 54 (citing *In re Pobiner*, 309 B.R. 405, 420 (Bankr. E.D.N.Y. 2004)). It asks, in part, how a debtor has responded to any available repayment opportunities, and whether the ratio of the student loan debt to the total dischargeable debt suggests that the sole purpose of filing was to discharge the student loans. *Id.* at 55–56. The facts presented establish that payments ceased in 2008. Payment History, ECF No. 12-1. There is no indication of who made those payments, and what, if anything, was done after the default. Indeed, the facts presented show no effort whatsoever to repay after 2008. Additionally, EduCap's scheduled claim of $61,665.30 makes up 96% of the total scheduled claims. These facts are not the subject of any dispute, genuine or otherwise, and establish that the Debtor would be unable to meet her burden of showing a good faith effort to repay.

Before concluding, the Court must address several additional points raised by the Debtor that she argues are sufficient to save her from summary judgment. She asserts that there are issues of fact as to: EduCap's standing to sue, Aff. in Opp'n ¶¶ 8–9, ECF No. 14; her own status as a co-obligor, *id.* at ¶¶10–14; whether attorney's fees awarded in the state court are reasonable, *id.* at ¶ 22; and whether the loan was usurious, *id.* at ¶¶ 23–26. To the extent that the Court is not barred from addressing these issues by the *Rooker-Feldman* doctrine, *see generally Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *Hoblock v. Albany Cty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005) (barring district court from maintaining jurisdiction over a claim brought by a party who: (1) lost in state court; (2) complains of injuries caused by that state court judgment; (3) invites the district court to review and reject the state court judgment; and (4)

commenced the federal suit after entry of the state court judgment), they are otherwise either irrelevant to the issue of dischargeability, and are therefore not material, or are unsupported. On the issues pertinent to § 523(a)(8), discussed above, EduCap has demonstrated the absence of a genuine dispute of material fact, and the Debtor has not made a contrary showing.

## Conclusion

For the reasons set forth above, the Court finds that EduCap's debt is not dischargeable under 11 U.S.C. § 523(a)(8)(A)(i), and that the Motion is therefore Granted.

IT IS SO ORDERED.



**Dated: March 18, 2018**  
**Brooklyn, New York**

**Nancy Hershey Lord**  
**United States Bankruptcy Judge**